◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NATHANIEL PALMER, Also Known as JAMES JONES, Appellant.

The defendant contends that his initial detention by police officers was unlawful and, consequently both the physical evidence and the showup identification testimony should have been suppressed. We disagree.

The relevant evidence indicates that police officer Jose Rodriguez received a radio transmission of an armed robbery in progress. On his way to the scene of the crime he saw three black males a few blocks from the scene. Upon receiving further descriptions of the suspects from his fellow officers, he remembered the three individuals he had seen previously and returned to look for them. Within the vicinity of where he had previously observed the three individuals, Officer Rodriguez saw the defendant and his two codefendants. They all fit the general description of the perpetrators of the crime. He noted that the streets were deserted. When the officer called out to the defendant and his codefendants to stop, they ignored him and kept walking. We recognize that "[a]n individual to whom a police officer addresses a question has a constitutional right not to respond. He may remain silent or walk or run away. His refusal to answer is not a crime" *(see, People v Howard,* 50 NY2d 583, 586, *cert denied* 449 US 1023). Under the circumstances, however, Officer Rodriguez clearly had the right to stop. These were three individuals, all of whom fit the general description of the perpetrators, who were walking on a deserted street after 3:00 A.M. and refused to stop when called upon to do so by a uniformed officer. Officer Rodriguez was justified in considering them as suspects and forcibly detaining

them for further inquiry. The frisk was consequently justified since the officer had information that the suspects were armed.

We also note that the officer did not initially put his hand in the pocket of the defendant's jacket. He did so only after he patted the outside and felt an object like the handle of a gun. We conclude that in this case the hearing court correctly refused to suppress the gun.

On the issue of identification, we note that as a general rule, the practice of exhibiting a suspect to a witness for identification without benefit of a lineup, absent exigent circumstances, has been condemned as violative of due process. However, a showup identification is not per se improper and may be sustained where the witness is shown the suspect within a relatively short time after the incident *(People v Brnja,* 70 AD2d 17, *affd* 50 NY2d 366; *People v Hicks,* 68 NY2d 234; *see also, People v Alleyne,* 136 AD2d 552).

In this case, the complainant was transported to the scene to see if the defendant and his two codefendants were the perpetrators. The showup identification, which occurred approximately one-half hour after the crime, falls within the category of speedy on-the-scene identifications which are beneficial both to the suspect and the police. Mollen, P. J., Mangano, Eiber and Sullivan, JJ., concur.